JACOB, APPELLANT, *v.* CURRY, REGISTRAR, BUREAU OF MOTOR VEHICLES, APPELLEE.

[Cite as Jacob v. Curry (1975), 42 Ohio St. 2d 145.]

(No. 74-694—Decided April 23, 1975.)

*Messrs. Gonda, Jacob, Shore & Howard* and *Mr. Richard F. Gonda,* for appellant.

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Thomas A. Cables,* for appellee.

WILLIAM B. BROWN, J. This state's traffic law violation point system is wholly contained in R. C. 4507.40.* A review of that statute discloses a comprehensive, step-by-step legislative scheme which provides for, *inter alia,* the compilation of violation records by appellee; allocating points to specified offenses; and suspending driving privileges of persons exceeding the allowable point limits.

Appellee failed to comply with R. C. 4507.40(J), which reads:

"Whenever the points charged against any person equals one-half or more of the total number of points for which a license may be suspended under this section, the registrar shall forward to such person at his last known address, via regular mail, a warning letter listing the reported violations, along with the number of points charged for each, and outlining the suspension provision of this section."

The statutory language is mandatory and clear: appellee should have immediately sent appellant a warning letter upon his accumulating more than five points.

However, the Court of Appeals found no significance in appellee's failure to send the letter, because, in that court's opinion, appellee's compliance or noncompliance with subsection (J) could not control a court's license suspension powers under subsection (N). We disagree.

---

*All references to R. C. 4507.40 are to the provisions of that section in effect prior to January 1, 1974.

Any license suspension powers possessed by a court under R. C. 4507.40 are wholly dependent upon a cause being presented to the court by a licensee. Pursuant to subsection (K), a driver's license is effectively suspended 20 days after appellee mails the notice of his determination that a licensee has exceeded the point limit, where the licensee fails to contest the suspension in court. Subsection (N) becomes operative only after a licensee has invoked the jurisdiction of a court in contesting his license suspension. It is the appellee's determination, under subsection (K), which initiates the process, and his action or inaction therefore does control a court's license suspension powers under R. C. 4507.40.

Thus, the Court of Appeals essentially determined that noncompliance with the mandatory terms of subsection (J) is of no effect. Where the *significance* of the terms of a statute is doubtful, this court will apply the rule *in pari materia* to determine the intent of the Legislature. *State* v. *Fremont Lodge of Loyal Order of Moose* (1949), 151 Ohio St. 19, paragraph nine of the syllabus.

Applying that rule to subsections (J) and (K), this court holds that appellee's compliance with the provisions of subsection (J), immediately upon a licensee accruing the requisite number of points, is a condition precedent to appellee initiating license suspension proceedings under subsection (K). Appellee's compliance with subsection (J) will now serve to advise a driver that the plateau has been reached at which two points may be erased from the record upon the driver attending traffic school. R. C. 4507.40 (L) (effective January 1, 1974); *Haas* v. *Curry* (1974), 42 Ohio Misc. 1.

Appellee views as "absurd" the possibility that a licensee might accrue points at such a rapid rate that a warning letter under subsection (J) would be quickly followed by a suspension letter under subsection (K). We fail to appreciate the absurdity, but observe that under subsection (I), where numerous violations arise out of the same facts, points may be assessed for only one such violation.

For the foregoing reasons, we reverse the judgment of the Court of Appeals.

*Judgment reversed.*

CORRIGAN, CELEBREZZE and P. BROWN, JJ., concur.
O'NEILL, C. J., HERBERT and STERN, JJ., dissent.

STERN, J., dissenting. I cannot concur in the majority's interpretation that R. C. 4507.40(J) "is a condition precedent to license suspension under R. C. 4507.40(K)." There is nothing in R. C. 4507.40 which justifies attributing any such meaning to the statutory provision of license suspension for repeat traffic offenders. Subsection (J) does not set a time limit within which such notice must be sent; it does not require that the warning in fact be received by the offender; and it does not require that actual receipt of the notice be established by the state as a part of the procedure for license suspension under subsection (K). The process adopted by the majority is to read into one subsection the directory provision of another subsection as a condition precedent; it could as logically be argued that the sending of a notice of imminent suspension under subsection (K) fulfills the requirement of subsection (J) that a notice be sent "whenever the points charged against any person equals one-half or more of the total number of points for which a license may be suspended," and that such notice constitutes substantial compliance.

Neither the appellant nor the majority present any reason why the failure to send the warning letter has any connection with the suspension proceedings. In failing to receive such warning no prejudice can be claimed by the offender. No lack of due process appears, because the offender cannot be deprived of his driving privileges until the provisions for notice and hearing of subsection (K) are complied with, and there is nothing in R. C. Chapter 4507 to indicate that failure to comply with subsection (J) prohibits the public authority from bringing suspension pro-

ceedings under subsection (K). Certainly, as a general principle, the law does not require that potential offenders be given advance notice of the possible penalty for an offense, and nothing in the language of this statute indicates that such an anomalous result was intended here

It is obvious that in enacting subsection (J) the General Assembly failed to provide that it be a condition precedent for subsection (K). To add anything to the statute which is not there is to legislate by judicial fiat. I do not condone the failure by public officials to perform their duty in sending out these notices, if, in fact, such failure has occurred. However, the General Assembly, in requiring that such notices be sent, set out no procedures for review and hearing as it did in subsection (K) for suspension proceedings, and only issued a directory order to the Department of Public Safety and other officials. Subsection (J) is a mere direction to those officials. Its disregard does not invalidate a subsequent conviction for a traffic offense or the penalty of suspension of driving rights which the statute mandates for a repeat offender. See 26A Corpus Juris Secundum 958.

I would affirm the judgment of the Court of Appeals.

O'NEILL, C. J., and HERBERT, J., concur in the foregoing dissenting opinion.