OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Yitzchak E. Gold, Assistant Court Reporter. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Department of Liquor Control, Appellee, v. Sons of Italy Lodge 0917, Appellant.
[Cite as Ohio Dept. of Liquor Control v. Sons of Italy Lodge 0917 (1992),     Ohio St.3d     .]
Criminal law -- Notice requirements set forth in former R.C. 2933.43(C) are mandatory and require strict compliance with the notice and publication provisions contained therein.
The language of former R.C. 2933.43(C) is mandatory; it requires strict compliance with the notice and publication provisions contained therein.
(Nos. 91-1792 and 91-2486 -- Submitted September 22, 1992 -- Decided December 30, 1992.)
Appeal from and Certified by the Court of Appeals for Franklin County, No. 90AP-1359.

On June 17, 1988, investigators from appellee, the Department of Liquor Control ("department"), entered the premises of appellant, Sons of Italy Lodge 0917 ("lodge"), acting upon a complaint received by the department. The complaint alleged that individuals who were not members of the lodge were purchasing alcoholic beverages, and that gambling was occurring on the premises. After investigating, the agents confiscated two video draw poker machines and $817.51. The department charged the lodge with violating a regulation of the Ohio Liquor Control Commission ("commission"). The charge read:

"On June 17, 1988, your unidentified agent and/or employee BENJAMIN SPRINGER and/or SANDRA BLYSTONE did permit and/or allow in and upon or about the permit premises, playing, gaming or wagering on a game of skill or chance to wit, electronic video gambling device -top draw-and Rivera machines --in violation of [Ohio Adm.Code] 4301:1-1-53[B]1 a regulation of the Ohio Liquor Control Commission."

At an administrative hearing held on December 1, 1988, the lodge denied committing the violation . The commission found the lodge in violation of the regulation and suspended its liquor license for five days. The lodge did not appeal the suspension.

The administrative order was dated December 12, 1988, and

the department filed a petition for forfeiture on December 16, 1988.  The hearing date was set for January 4, 1989.  The certificate of service attached to the petition stated that the department sent a copy of the petition for forfeiture to the lodge by regular mail, postage paid, on December 16, 1988. Public notice was not published in the newspaper until December 23, 1988 and the hearing date printed in the notice did not correspond with the hearing date actually set by the court.  As a result of this discrepancy, the hearing was rescheduled for January 25, 1989.

No transcript of the hearing was made, but the record reveals that no new evidence was presented by either party. The lodge filed a motion to dismiss the forfeiture proceeding. On August 29, 1989, the trial court overruled the motion to dismiss.  The court of appeals sua sponte dismissed the lodge's appeal because the entry of the trial court did not constitute a final appealable order.

The trial court issued a judgment on the petition for forfeiture on November 7, 1990.  It found that the department had shown by a preponderance of the evidence that the draw poker machines and money were contraband and were in the possession of the lodge in violation of R.C. 2933.42.  The trial court ordered the property forfeited to the department.

On appeal, the lodge argued that the department had failed to comply with former R.C. 2933.43(C)'s procedural notification requirements for the forfeiture hearing, and for that reason the trial court should have dismissed the forfeiture action without reaching the merits.  The lodge also argued that the trial court erred in finding that the department investigators' report was admissible evidence under Evid.R. 803(8) as a public record or report, and that the trial court erred in finding that the property was contraband.

The court of appeals affirmed the trial court and upheld the order of forfeiture.  In particular, the court found that the lodge was not prejudiced by the department's failure to precisely comply with the notice provisions of R.C. 2933.43(C), and that strict compliance with the notice procedures was not required in this case.

The cause is now before this court upon the allowance of a motion to certify the record (case No. 91-1792).  In addition, the appellate court found its judgment regarding the notice provisions of R.C. 2933.43(C) to be in conflict with the judgment of the Court of Appeals for Lucas County in State v. Jacobiak (Dec. 22, 1989), Lucas App. No. L-89-016, unreported, 1989 WL 155185, and with the judgment of the Court of Appeals for Summit County in State v. Tysl (June 20, 1990), Summit App. No. 14348, unreported, 1990 WL 83971, and certified the record of the case to this court for review and final determination (case No. 91-2486).

Lee I. Fisher, Attorney General, and Kurt O. Gearhiser, Assistant Attorney General, for appellee.
John A. Connor II Co., L.P.A., John A. Connor II and Darrell E. Fawley, Jr., for appellant.

Wright, J.  The issue certified for our review is: "Whether the notice requirements set forth in [former] R.C.

2933.43(C) are mandatory or whether substantial compliance with the notice requirements is all that is required to vest the trial court with jurisdiction to proceed where the defendant has actual notice."  Because the language of R.C. 2933.43(C) is mandatory, strict compliance with the notice and publication provisions contained therein is required.

In construing a forfeiture statute the court must begin with a fundamental premise:  Forfeitures are not favored by the law.  The law requires that we favor individual property rights when interpreting forfeiture statutes.  To that end, "statutes imposing restrictions upon the use of private property, in derogation of private property rights, must be strictly construed."  State v. Lilliock (1982), 70 Ohio St.2d 23, 26, 24 O.O.3d 64, 65, 434 N.E.2d 723, 725.

The language of former R.C. 2933.43(C) is clear and unequivocal:  the petitioner seeking forfeiture "shall give notice of the forfeiture proceedings by certified mail, * * * and shall publish notice of the proceedings once each week for two consecutive weeks in a newspaper of general circulation in the county in which the seizure occurred.  The notices shall be mailed and first published at least four weeks before the hearing."  (Emphasis added.)

It is axiomatic that when it is used in a statute, the word "shall" denotes that compliance with the commands of that statute is mandatory.  The rule has been stated frequently and clearly:  "In statutory construction, the word 'may' shall be construed as permissive and the word 'shall' shall be construed as mandatory unless there appears a clear and unequivocal legislative intent that they receive a construction other than their ordinary usage."  Dorrian v. Scioto Conservancy Dist. (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the syllabus.2  The lower courts of this state have long relied on this clear rule of construction.3

There is not even a remote indication, let alone "clear and unequivocal legislative intent," that the General Assembly considers the procedures set forth in R.C. 2933.43(C) to be permissive guidelines rather than mandatory instructions.  Quite the contrary, the General Assembly chose mandatory language to assure that due process would be afforded in all cases in which the state seeks forfeiture.  The General Assembly itself provided detailed safeguards in R.C. 2933.43(C), including the requirements that diligent inquiry regarding ownership of the seized property be undertaken and that specific notice requirements and time limits be followed.  It is not this court's prerogative to second-guess the General Assembly's legislative policy choices.

Concurring in State v. Casalicchio (1991), 58 Ohio St.3d 178, 183, 569 N.E.2d 916, 921, Justice Douglas reflected on the language used by the General Assembly in R.C. 2933.43(C):  "[T]he forfeiture statute is strong, but needed, medicine.  Because of the endless possibilities of how the statute can be used by law enforcement agencies, the General Assembly obviously meant that certain procedural safeguards be followed.  If those time-limit safeguards are not followed, then said the legislature, forfeiture may not take place.  We should enforce, in this regard, the will of the legislative body."  Id. at 184, 569 N.E.2d at 922.

The department argues, in effect, that substantial compliance with the notice and publication requirements of R.C. 2933.43(C) adequately protected the lodge's due process rights, under the facts and circumstances of this case. The department misunderstands our role in reviewing the adequacy of due process protection. It is true that our inquiry is not limited to superficially considering whether the dictates of R.C. 2933.43(C) were followed; we also consider whether constitutional due process rights were, in actuality, adequately protected. This court has an obligation to determine whether due process is afforded even when there is strict compliance with the requirements of the statute.4 However, if strict compliance with the clear language of the statute does afford due process, our inquiry is complete. We are not permitted to decide whether something less than strict compliance, contrary to the clear intent of the legislature, might also meet minimal due process requirements in a particular case.

If the clear language of the statute is not sufficient to establish that it is mandatory, the actions of the General Assembly in amending R.C. 2933.43 provide additional support. Under former R.C. 2933.43(C), the law applicable here, law enforcement officials were required to provide notice of the forfeiture hearing by publication at least four weeks prior to the hearing. The hearing, in turn, was to be held no later than thirty days after the "conviction, or the admission or adjudication of the violation." This left the state only two days to file its petition and publish notice.5

However, in 1990 the General Assembly amended R.C. 2933.43, in part, by increasing the amount of time before a hearing had to be held from thirty to forty-five days--which gives the state fifteen additional days to publish notice of the hearing. 143 Ohio Laws, Part I, 1457. This amendment addressed law enforcement's concern that it might be difficult to comply with the mandatory language of the statute. Moreover, it clearly reinforces the General Assembly's intent that the state must strictly comply with the procedural requirements of R.C. 2933.43. If the General Assembly was content to permit the statute to be directory rather than mandatory, it would not have seen the need to increase the state's time to comply with its provisions.

The broad definition of "contraband" contained in R.C. 2901.01(M) reinforces the need for strict compliance with the notice and publication requirements of R.C. 2933.43(C). R.C. 2933.42(A) provides that it is illegal to possess "contraband," as defined in R.C. 2901.01(M). R.C. 2933.42(B) makes clear that an expansive definition is to be given to the term "contraband," so that some property otherwise not within the scope of the definition may also be contraband, and subject to seizure and forfeiture in the proper situation. See State v. Baumholtz (1990), 50 Ohio St.3d 198, 199, 553 N.E.2d 635, 636. In State v. Casalicchio (1991), 58 Ohio St.3d 178, 179-181, 569 N.E.2d 916, 918-919, this court recognized that R.C. 2933.42(B)'s expansion of the definition of "contraband" has the effect of making property subject to forfeiture when the property's connection to an unlawful activity may not be great. Despite that observation, Casalicchio upheld the

constitutionality of R.C. 2933.42 and 2933.43.

The term "contraband" now encompasses many different types of property. At one extreme is property which by its very nature is contraband, such as illegal narcotics (R.C. 2901.01[M][5]); property of this type is summarily forfeited when seized. At the other extreme is property which may have only a minimal relationship to the illegal act committed, such as a motor vehicle involved in an alleged drug deal (R.C. 2901.01[M][7]). Strenuous due process protections must be afforded in order to avoid unfair forfeitures where the property's status as contraband is unclear. As the connection between the illegal act and the alleged contraband associated with it becomes increasingly tenuous, the necessity for due process protection becomes increasingly important, and the observance of procedural requirements may not be summarily dispensed with. Strict compliance with the notice and publication requirements of R.C. 2933.43(C) is necessary to deal with the broad spectrum of property which is subject to forfeiture. Otherwise, law enforcement and the courts would have to engage in a case-by-case analysis to determine what measure of compliance is adequate.

Ironically, while the department's position is aimed at facilitating its ability to obtain forfeitures, in the long run it would in fact burden the justice system. Creating a case-by-case standard would place an unreasonable burden on both law enforcement agencies seeking forfeiture and courts ruling on forfeiture petitions. These agencies and courts would have to decide what level of compliance with the requirements of R.C. 2933.43(C) would satisfy due process in each and every case. At least substantial compliance would have to be found in those cases in which strict compliance is not necessary. This would create a two-tiered analysis: (1) the first tier would require the law enforcement agency and the courts to decide whether strict compliance or substantial compliance is enough to satisfy due process; and (2) if substantial compliance was sufficient, then the second tier would require determination of what constitutes substantial compliance under the particular facts and circumstances of each case.

This two-tiered analysis is completely unnecessary and would unduly complicate forfeiture proceedings for the state. Of even more concern, however, is the fact that by creating it we would be usurping the function of the General Assembly. We would not only be legislating by judicial fiat, but would also be doing so in a manner that negates protection specifically mandated by the legislature.

Because we hold that strict compliance with the notice and publication requirements of former R.C. 2933.43(C) is mandatory, we need not address the lodge's other propositions of law. The judgment of the court of appeals is reversed and the cause is remanded to the Franklin County Court of Common Pleas for dismissal.

                              Judgment reversed
                              and cause remanded.

Moyer, C.J., Sweeney, Holmes, H. Brown and Resnick, JJ., concur.

Douglas, J., not participating.

FOOTNOTES:

1 Ohio Adm.Code 4301:1-1-53(B) provides:

"No person authorized to sell alcoholic beverages shall have, harbor, keep, exhibit, possess or employ or allow to be kept, exhibited or used in, upon or about the premises of the permit holder of any gambling device as defined in division (F) of section 2915.01 of the Revised Code which is or has been used for gambling offenses as defined in division (G) of Section 2915.01 of the Revised Code."

2 See, also, State ex rel. Plain Dealer Pub. Co. v. Barnes (1988), 38 Ohio St.3d 165, 527 N.E.2d 807; Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, 511 N.E.2d 1138; State ex rel. Hanley v. Roberts (1985), 17 Ohio St.3d 1, 17 OBR 1, 476 N.E.2d 1019; Malloy v. Westlake (1977), 52 Ohio St.2d 103, 6 O.O.3d 329, 370 N.E.2d 457; State ex rel. Ewing v. Without A Stitch (1974), 37 Ohio St.2d 95, 66 O.O.2d 223, 307 N.E.2d 911; Dennison v. Dennison (1956), 165 Ohio St. 146, 59 O.O. 210, 134 N.E.2d 574.

3 See, e.g., Perkins v. Ohio Dept. of Transp. (1989), 65 Ohio App.3d 487, 584 N.E.2d 794; Toledo Trust Co. v. Yakumithis Enterprises, Inc. (1987), 35 Ohio App.3d 31, 519 N.E.2d 425; Ohio Council 8, AFSCME v. Weber (1985), 27 Ohio App.3d 133, 27 OBR 164, 499 N.E.2d 1276; State v. Cichy (1984), 18 Ohio App.3d 6, 18 OBR 30, 480 N.E.2d 90; Bilikam v. Bilikam (1982), 2 Ohio App.3d 300, 2 OBR 332, 441 N.E.2d 845; Stephan v. State Veterinary Med. Bd. (1960), 113 Ohio App.538, 18 O.O.2d 177, 173 N.E.2d 389; Drugan v. Flaler (Ohio App. 1958), 161 N.E.2d 786; State ex rel. Merrill v. Greenbaum (1948), 83 Ohio App.484, 38 O.O. 537, 84 N.E.2d 253; In re Buchanan's Estate (1948), 82 Ohio App.240, 37 O.O. 557, 81 N.E.2d 409; Haas v. Curry (M.C. 1974), 42 Ohio Misc. 1, 71 O.O.2d 30, 325 N.E.2d 566; Page v. Bd. of Liquor Control (C.P. 1954), 69 Ohio Law Abs. 545, 53 O.O. 445, 121 N.E.2d 125.

4 For example, in Robinson v. Hanrahan (1972), 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47, the state complied with the procedural requirements of the Illinois forfeiture statute, but the United States Supreme Court found that compliance inadequate under the Due Process Clause.

5 The department argues that the provisions of R.C. 2933.43(C) are merely directory because "it could rarely, if ever, have met the publishing requirements of the old Ohio Revised Code 2933.43(C)." This argument belies the simplicity of the task. The department knew from the day of seizure that it intended to seek forfeiture. The petition used by the department is a boilerplate, fill-in-the blanks form. The department could have been ready to file and arrange for publication prior to receipt of the administrative decision.